JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Elmer Ndoji appeals his sexual battery convictions. We affirm.
 {¶ 2} Ndoji was charged in a 13-count indictment. Counts 11, 12, and 13 related to victim K.K., [1] and are the subject of this appeal. Counts 11 and 12 charged rape under R.C. 2907.02(A)(2), and count 13 charged kidnapping. Upon Ndoji's motion, counts 11, 12, and 13 were tried separate from the other counts of the indictment. At the conclusion of the State's case, the defense made a Crim. R. 29 motion for acquittal, which the court denied. After presenting one witness and resting, the defense renewed its Crim. R. 29 motion, which was again denied.
 {¶ 3} After its deliberation, the court found Ndoji guilty of sexual battery, a lesser included offense of rape under R.C. 2907.02(A)(2), and not guilty of kidnapping. Ndoji was sentenced to a two-year term.
 {¶ 4} At trial, K.K. testified that on November 11, 2006, she and some friends went to two bars in Lakewood, Ohio, and she became intoxicated. While at the second bar, and while intoxicated, K.K. met Ndoji, who she previously did not know. K.K. flirted with Ndoji, approaching him several times, hugging, and *Page 4 
kissing him. K.K. and Ndoji eventually left the bar area holding hands. The bar's surveillance camera captured much of K.K.'s and Ndoji's interactions.
 {¶ 5} Ndoji and K.K. left the bar and went to Ndoji's car, whereupon he drove them to his apartment. K.K. testified that when Ndoji took her hand, she thought he was taking her to dance. She admitted, however, that she never tried to let go of his hand, even after they had exited the bar. K.K. testified that when she was in Ndoji's car she asked him if she was okay, and he did not respond. She testified that she became concerned when her cell phone rang and Ndoji took the phone without letting her answer it.
 {¶ 6} K.K. described that, upon arriving at the apartment complex, Ndoji led her out of the car and into the building and his apartment. Once inside the apartment, K.K. sat down on the couch and Ndoji "helped her lie down." Ndoji then pulled his pants down and attempted to make K.K. perform oral sex on him, but she refused. K.K. described that Ndoji got up from the couch, walked away (presumably to his bedroom), came back naked, and "helped [her] take [her] pants off." After K.K.'s pants were off, Ndoji had sexual intercourse with her. K.K. did not resist, but she cried, told him "I don't want to do this," and asked "[w]hy are you doing this?" Ndoji did not say anything to her, except to tell her to be quiet so that she would not wake the neighbors in the adjoining apartments. *Page 5 
 {¶ 7} K.K. testified that after the encounter, she and Ndoji got themselves dressed, left the apartment, and Ndoji drove her back to the bar. According to K.K., Ndoji just dropped her off by the side of the bar and was "acting like he had not done anything wrong." K.K. went into the bar, found her friends and told them what had happened. One of her friends described K.K. as "crying" and "in shock." K.K.'s friends ultimately convinced her to call the police.
 {¶ 8} Ndoji's sole assignment of error is as follows: "The record contains insufficient evidence to support Mr. Ndoji's conviction as a matter of law and the conviction was against the manifest weight of the evidence."
 {¶ 9} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 10} A claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test. "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of *Page 6 
justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 11} At trial, the judge, assistant prosecuting attorney, and defense counsel all agreed that if the court were to consider sexual battery as a lesser-included offense of rape, in this case, it could do so only under subsection (A)(1) of R.C. 2907.03. The only other subsection of R.C. 2907.03 that could have been applicable in this case was (A)(2), which provides that" [t] he offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired." This court has held, however, that R.C. 2907.03(A)(2) is not a lesser-included offense of rape under R.C. 2907.02(A)(2). See State v. Hutchins, Cuyahoga App. Nos. 81578, 81579, 83421, and 83564, 2005-Ohio-501, ¶ 17; In the Matter of: C.S., Cuyahoga App. No. 85561, 2005-Ohio-2632, ¶ 5.
 {¶ 12} R.C. 2907.03(A)(1), the applicable section here, provides as follows:
 {¶ 13} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: *Page 7 
 {¶ 14} "(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution."
 {¶ 15} Ndoji argues that the State failed to prove that he "coerced" K.K. The Revised Code does not define "coercion," but the commentary to R.C. 2907.03 states that "sexual conduct by coercion * * * is somewhat broader than sexual conduct by force[.]"
 {¶ 16} In State v. Wilkins (1980), 64 Ohio St.2d 382, 415 N.E.2d 303, the Ohio Supreme Court agreed with this commentary, holding that "force or the threat of force will always constitute coercion that would prevent resistance by a person of ordinary resolution." Id. at 385. See, also, State v. Tolliver (1976), 49 Ohio App.2d 258, 263-264,360 N.E.2d 750; State v. Byrd, 8th Dist. No. 80609, 2002-Ohio-5838, ¶ 37; In reJordan (Sept. 12, 2001), 9th Dist. No. 01CA007804 at 4. Thus, as the Ninth District said in Jordan, "coercion means to compel by pressure, threat, force or threat of force." Id.
 {¶ 17} Upon review, we find that there was sufficient evidence to find Ndoji guilty of sexual battery, and the manifest weight of the evidence supports the conviction. K.K. testified that although she did not physically struggle with Ndoji when he engaged in intercourse with her, she cried and told him that she did "not want to do this," and asked "[w]hy are doing this?" That testimony *Page 8 
supports a finding that Ndoji coerced K.K. into sexual conduct and, thus supports the sexual battery conviction.
 {¶ 18} The assignment of error is overruled.
 {¶ 19} Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, JUDGE
MARY EILEEN KILBANE, J., CONCURS;
ANTHONY O. CALABRESE, JR., P.J., DISSENTS WITH OPINION
[1] In accordance with this court's policy in cases involving sex-related crimes, we refer to the victim by her initials.